RULEY, JUDGE:
The claimant asserts that on January 23, 1978, its retail gasoline service station on West Virginia Route 20 in Athens, Mercer County, West Virginia, was closed upon the oral order of the respondent acting through an Assistant State Fire Marshal, Frank Ubeda, due to the presence of gasoline vapors or fumes in the Mountain Lion Motel which is located upon adjacent property. It also is asserted that, although the results of air tests upon claimant’s gasoline tanks, which were negative, were given to the respondent later that same month, the respondent negligently refused to permit the station to reopen until June 28, 1978. Claimant seeks recovery of $6,000.00 for loss of profit and $539.52 in expense incurred in draining and testing its tanks.
West Virginia Code §29-3-14 refers to the state fire marshal, and provides in part:
“. . .whenever he may find in any building or upon any premises any combustible, flammable or explosive substance or material, or other conditions dangerous to the safety of persons occupying the building or premises and adjacent premises or property, he may make reasonable orders in writing, directed to the owner of such build-in, structure or premises, for the repair or demolition of such building or structure, or the removal of the combustible, flammable or explosive substance or material, as the case may be, and the remedying of any conditions found to be in violation of a regulation promulgated as *128 aforesaid or to be dangerous to the safety of persons or property.
A true copy of every order of the state fire marshal as provided for in this section shall be filed in the county where the premises are totally or partially located, with the county clerk who shall index and record the order in the general lien book. Upon filing, the order constitutes notice of such proceedings to all persons or parties thereafter having dealings involving said property.” (Emphasis supplied.)
According to the undisputed testimony, gasoline fumes or vapors were present in the claimant’s service station and in the adjacent motel on January 23, 1978. The service station had been closed for a few weeks as of that date. Mr. Ubeda, who inspected both establishments on that date, testified, without contradiction, that gasoline was seeping through a wall beside the station and that there were pools of gasoline standing on the floor of the basement underneath its office. He also testified unequivocally that he did not order the station closed. James D. Evans, the claimant’s general manager, was present during that inspection. Other persons also were present. Mr. Evans did not testify that Mr. Ubeda ordered the closure of the station, but testified:
“Well, I felt like the impressions I got from everyone that we ought to keep the station closed until the situation was corrected or until we found the source of the problem.”
Although the motel was evacuated on January 23, 1978, Mr. Evans testified that he was aware on January 24, 1978, that it resumed normal operation on that date. Following that date, there was considerable correspondence between Mr. Morhous, writing on behalf of the claimant, and the respondent. In a letter dated March 1, 1978, and in a letter dated March 16, 1978, Mr. Morhous alluded to “verbal closure” of the station by Mr. Ubeda, an allusion which was not rejected in responsive correspondence. But, even if the failure to reject that assertion at that time is viewed as some species of acquiescence, there is no way that it can be elevated to constitute com *129 pliance with the quoted satute. In addition, after acknowledging that the claimed oral order did not comply with the statute, Mr. Morhous, in his letter of March 16, 1978, a copy of which was mailed to the claimant, stated:
“Accordingly, we are advising our client by copy of this letter that unless it is in receipt of your written order closing the above establishment as provided in the above referenced West Virginia Code provisions within ten (10) days of your receipt of this letter, they should proceed with reopening this establishment for normal business.”
That was excellent legal advice and the claimant would have been wise to follow it. In fact, Mr. Evans explained that the reason the station was not opened from March until July was because of difficulty in finding an operator. While there may have been some misunderstanding or misapprehension about the matter, the Court cannot conclude from the evidence that the respondent ordered the closure of the station or negligently refused to permit it to reopen, and, for that reason, this claim must be denied.
Claim disallowed.